IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DE'ANGELO MANUEL,  #266919, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:19-cv-105-MHT-JTA |
| | ) | |
| KAY IVEY, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

This 42 U.S.C. § 1983 action is pending before the court on a complaint, as amended, filed by De'Angelo Manuel ("Manuel"), appearing *pro se*, alleging that the defendants deprived him of due process by voiding his grant of parole and violated his equal protection rights by discriminating against male prisoners.  (Docs. 1, 5). Manuel further alleges that overcrowding, health hazards, and lack of security in Alabama prisons warrant his release on parole. *Id*. As relief, Manuel seeks a jury trial and a "court order upon the defendants to end their gender discrimination practice at once, and relieve their overcrowded prison of their male prisoner and stop upholding the parole board in its constitutional forbidden practices by reinstating Manuel's parole taken without due process."  (Doc. 1 at p. 4).[1]  Later Manuel amended his complaint to seek money damages from the defendants in their individual capacities for alleged retaliation and

---

[1] The Court has construed Plaintiff's complaint to seek "reconsideration of the decision to rescind parole" so that the complaint could "proceed as a 1983 action."  (Doc. 6 at p. 1).

malicious prosecution based upon the delay in scheduling a subsequent parole consideration.  (Docs. 52, 59).

Manuel names as Defendants Lyn Head ("Head"), the current Chairman of the Alabama Board of Pardons and Paroles, Kay Ivey ("Ivey")[2], the current Governor for the State of Alabama, and Jefferson Dunn ("Dunn"), the current Commissioner of the Alabama Department of Corrections. (Doc. 1). Defendant Head voted to deny Manuel parole, but maintains she denied parole for proper reasons and denies all Manuel's allegations.  (Docs. 19-2, 19-4).  Neither Defendant Governor Ivey nor Defendant Dunn voted in Manuel's case and Defendant Dunn denies all Manuel's allegations. (Docs. 19-2, 19-4, 24-1, 28-1).   Manuel sues Defendants in both their official and individual capacities.  (Docs. 1, 5, 52, 59).

Defendants filed special reports and relevant evidentiary materials addressing the claims for relief raised by Manuel. (Docs. 19, 24, 28).  In these filings, Defendants deny violating any of Manuel's constitutional rights, including due process and equal protection of the law.   (Docs. 19-2, 24-1, 28-1).  Defendant Head, the only defendant who took part in the decisions to grant and then rescind Manuel's parole, denies that Manuel's parole file contains any false or incorrect information. (Doc. 19-2).  Defendant Head further asserts she did not knowingly rely on any false information in denying

---

[2]  Manuel seeks a default judgment against Defendant Governor Ivey because she did not file an affidavit specifically addressing his claims.  (Doc. 58).  However, entry of a default judgment is not appropriate where a defendant has answered the complaint.  *See* Fed. R. Civ. P. 55(a); *Guice v. Postmaster Gen., U.S. Postal Serv.,* 747 F. App'x 827, 829 (11th Cir. 2018).  In this case Defendant Governor Ivey answered both the complaint and amended complaints.  (Docs. 19, 64).  Further, Manuel has failed to demonstrate the "special need" necessary for the court to require testimony from a high-ranking government official. *See, In re USA,* 624 F.3d 1368, 1372 (11th Cir. 2010).

Patterson's parole.  *Id.*  Defendant Dunn states that he did not vote in Manuel's parole hearing and took no actions that violated any of Manuel's constitutional rights.  (Docs. 24-1, 28-1).   The basis of Manuel's complaint is Executive Order No. 716, issued by Defendant Governor Ivey on October 15, 2018.   The Order imposes a temporary moratorium on early parole hearings but does not require or recommend that the Board void or reconsider any previous grant of parole.   (Docs. 19-2 at pp. 1-2, 19-3). Defendants further deny that they retaliated against Manuel for filing this action by delaying his subsequent parole hearing.  (Doc. 64 at p. 9).

After reviewing the initial special report and supplemental special reports filed by Defendants (Docs. 19, 24, 28), the court issued an order on June 11, 2019 directing Manuel to file a response to each of the arguments set forth by Defendants in their reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. (Doc. 29 at pp. 1-2).  The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 29 at p. 3).  Manuel filed multiple responses to these reports.  (Docs. 32, 33, 35, 38, 39, 41, 50, 51).

Following Manuel's subsequent amendments to his complaint (Docs. 52, 53, 59, 63), the court ordered Defendants to file supplements to their special reports. (Doc. 63). Defendants complied. (Docs. 64, 70). The court instructed Manuel to file responses to these supplemental special reports. (Doc. 72). Manuel has filed multiple responses to these supplements. (Docs. 82, 87, 88, 89, 92, 93, 94, 95, 96, 97, 99, 100, 102, 103, 105). Pursuant to the directives of the orders entered in this case, the court now treats Defendants' reports collectively as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of Defendants.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party . . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at

324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Manuel's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After this review, the court finds that Manuel has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of Defendants.

## III.  DISCUSSION

### A.    Absolute Immunity — Official Capacity Claims

To the extent Manuel requests monetary damages from Defendants in their official capacities, they are entitled to absolute immunity.  Official capacity lawsuits are "in all

respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees].  There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution)). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials

sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

## B.    Quasi-Judicial Immunity — Individual Capacity Claims

Insofar as Manuel seeks monetary damages from Defendants for actions relative to the parole consideration process and the denial of parole, he is likewise entitled to no relief.  The Eleventh Circuit has long recognized that parole board officials are entitled to quasi-judicial immunity from suits requesting damages based upon decisions to grant, deny or revoke parole. *Fuller v. Georgia State Board of Pardons and Parole*, 851 F.2d 1307 (11th Cir. 1988); *Cruz v. Skelton,* 502 F.2d 1101, 1101–02 (5th Cir. 1974).  All of the actions about which Manuel complains arose during proceedings resulting in the denial of parole.   Under these circumstances, the actions of parole officials are inextricably intertwined with their decision-making authority, and they are therefore immune from payment of monetary damages.   Consequently, Manuel's claim for damages against Defendants in their individual capacities is due to be summarily dismissed.  Thus, the court will now turn its attention to Manuel's claims for injunctive relief based upon Defendants' denial of his parole and his claims for monetary and injunctive relief against Defendants based on retaliation for filing this action.

## C.    Material Facts

Manuel is an inmate at the Loxley Community Work Center in Alabama.  He is currently serving a 15 year, 1-month sentence for two counts of Robbery I.   He is

classified as a "violent offender" under Ala. Code § 12-25-32.  On October 15, 2018, Defendant Governor Ivey issued Executive Order No. 716, which placed a temporary moratorium on all early parole hearings for violent offenders.  (Docs. 19-2, 19-3).  The moratorium applied only to hearings that were to occur after the order was issued.  The Order did not require or recommend that the Board void or reconsider Manuel's, or any other inmate's, previous grant of parole.  *Id.*

Prior to Defendant Governor Ivey's issuance of the moratorium, the Board voted to grant Manuel early parole, but he was not released from custody of the ADOC.  (Doc. 19-2 at p. 1).  Thereafter, on October 25, 2018, Defendant Head voted to void her original vote granting parole to Manuel and directed that a reconsideration hearing be held.  (Doc. 19-2 at p. 2).  The reconsideration hearing was held on January 31, 2019, and the Board followed the procedures set forth in the Alabama Board of Pardons and Paroles Rules, Regulations, and Procedures, Article Seven, section 3.  *Id.*  At the reconsideration hearing, Defendant Head, and another member of the parole board who is not named as a defendant in this action, voted to deny Manuel parole and voted to schedule his next parole hearing date for his original parole hearing date, August 2019.  (Docs. 19-2 at p. 2; 19-4 at p. 2).  Defendant Governor Ivey did not vote at the hearing.  *Id.*  Defendant Dunn also did not vote or have any input into the decision to deny Manuel parole.  (Doc. 28-1 at p. 1).

## D.    Respondeat Superior and Vicarious Liability

Defendant Head is the only employee of the Parole Board named as a defendant in this action who in any manner participated in the decision to deny Manuel parole.  Thus,

the claims against Defendants Dunn and Ivey, based upon his denial of parole, entitle Manuel to no relief as these claims are based on theories of respondeat superior and vicarious liability.

> The law is well settled
>
> > that Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability]. . . . A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties.  Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citation and parentheses omitted); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010) (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (holding that a supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (holding that 42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government

official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability for actions of Defendant Head could attach to the other named defendants only if these defendants "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Manuel, however, has presented no evidence and the court cannot envision the existence of any evidence which would create a genuine issue of disputed fact with respect to the claims lodged against Defendants Ivey and Dunn. The evidentiary materials filed in this case which could be presented at trial demonstrate that these defendants did not personally participate in or have any involvement with the claims on which Manuel seeks relief. (Docs. 19-2 at p. 2, 19-4 at p. 2, 28-1 at p. 1). In light of the foregoing, Defendants Dunn and Ivey can be held liable for actions of Defendant Head only if their actions bear a causal relationship to the purported violation of Manuel's constitutional rights.

To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of Defendants Ivey and Dunn, on the claims related to his denial of parole, Manuel must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [these defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so . . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [these defendants] directed [defendant Head] to act unlawfully, or knew that [she] would act unlawfully and failed to stop [her] from doing so." *Cottone*,

326 F.3d at 1360 (internal punctuation and citations omitted).   The pleadings and evidentiary materials submitted in this case demonstrate that Manuel has failed to meet this burden.

The record before the court contains no evidence to support an inference that Defendants Dunn and Ivey caused Defendant Head to act unlawfully or knew that she would act unlawfully and failed to stop such action.   In addition, Manuel has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which these defendants failed to take corrective action.   Finally, it is clear that the challenged action did not occur pursuant to a policy enacted by Defendants Ivey or Dunn. Indeed, Defendant Dunn testified that he had no involvement with or any input into the decision to deny Manuel parole.  (Doc. 28-1 at p. 1).  Further, it is undisputed that the temporary moratorium on early parole decisions put in place by Defendant Governor Ivey's Executive Order No. 716 did not require or recommend that the Board void or reconsider any previous grant of parole.   (Docs. 19-2 at pp. 1-2, 19-3).   Thus, the requisite causal connection does not exist between the actions challenged by Manuel and the conduct of the aforementioned Defendants, and liability under the custom or policy standard is not warranted. Summary judgment is therefore due to be granted in favor of Defendants Ivey and Dunn on claims related to his denial of parole.

## E.    Claims Based on Denial of Parole

With respect to Manuel's claims against Defendant Head, the court understands Manuel to allege that he has been unconstitutionally denied parole. Specifically, Manuel claims that the parole denials have violated his due process rights, his equal protection

rights, and the ex post facto clause. He also claims that prison conditions, including overcrowding, justify his release to parole. He also alleges that loss of his parole constitutes malicious prosecution. Finally, he claims that Defendant Head retaliated against him for filing this action by delaying his parole consideration. The court will address these claims separately now.

### 1. Due Process Clause Claims

Under a due process analysis, the court must determine "whether there exists a liberty or property interest of which a person has been deprived and if so, . . . [then] whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (citation omitted). In this case, Manuel's allegation that Defendant Head deprived him of his due process rights by rescinding her decision to deny him early parole, and ultimately voting to deny parole to him fails at the first step. In *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex,* 442 U.S. 1, 12 (1979), the Court recognized that the determination of whether a state's parole statute provides a "protectible entitlement must be decided on a case-by-case basis."

The Eleventh Circuit has clearly stated that Alabama parole statutes do not create a liberty interest in parole. *Thomas v. Sellers,* 691 F.2d 487, 489 (11th Cir. 1982); *Ellard v. Alabama Bd. Of Pardons and Paroles,* 824 F.2d 937, 942 (11th Cir. 1987) ("[T]he Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole.") More specifically, the United States Supreme Court has held that inmates who are granted parole, but have not been released, have no protected liberty interest.

*Jago v. Van Curen,* 454 U.S. 14, 17-21 (1981).[3]  Thus, the court concludes that Manuel, who was never released from ADOC custody, does not have a liberty interest based upon the Board's initial decision to grant him parole which was rescinded.  (Doc. 19-2 at p. 1).[4]

Although Manuel does not have a liberty interest in parole, the Eleventh Circuit has held that a prison official may not act in an "arbitrary and capricious" manner or engage in a "flagrant or unauthorized action" in denying parole.[5]  *See Sellers,* 691 F. 2d at 489.  However, the facts in the instant action demonstrate that the decision to deny Manuel parole was not "arbitrary or capricious" and did not involve any "unauthorized action."  *Id.*  Indeed, Defendant Head testified as follows:

> 6.  On October 25, 2018, I voided my original vote granting parole and directed that a reconsideration hearing be held.  *I decided to void my previous vote after considering the seriousness of Manuel's offense and the affect that release could have, especially release before his original parole hearing set date of August 2019.*  My actions were proper and in

---

[3]  In his Complaint, Manuel cites to *Morrissey v. Brewer,* 408 U.S. 471 (1972), and argues that this case mandates the conclusion that he was deprived of his due process rights when the Board rescinded its decision to grant him early parole.  However, because Manuel was never released from custody and only had an expectation in liberty, the court concludes that the Supreme Court's opinion in *Jago, id.* applies in the instant case.

[4]  Without a liberty interest in parole, the Board's procedures do not have "to comport with standards of fundamental fairness."  *Slocum v. Georgia State Bd. of Pardons & Paroles,* 678 F. 2d 940, 942 (11th Cir. 1982).

[5]  Manuel has not specifically alleged that the Board acted in an arbitrary and capricious manner during the parole consideration process, nor has he identified any false information on which the Board allegedly relied.  Moreover, Defendant Head testified that she did not "rely[] on any false information when voiding [her] original vote and when reaching [her] vote to deny Manuel parole."  (Doc. 19-2 at p. 3).  Further, she stated that she was "not aware of any false information in Manuel's parole file."  *Id.*  Accordingly, the court concludes that any due process claim based on alleged false information also lacks merit and is due to be denied.  *See Monroe v. Thigpen,* 932 F. 2d 1437, 1442 (11th Cir. 1991) ("We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration.") (Citation omitted).

accordance with the Alabama Board of Pardons and Paroles Rules, Regulations and Procedures, Article Seven, section 3.

7.   During the January 31, 2019, reconsideration hearing, the Board followed the procedures set forth in Alabama Board of Pardons and Paroles Rules, Regulations and Procedures, Article Seven, section 3.   The reconsideration hearing used the same procedures employed for standard parole hearings.

. . .

13.   In reaching my vote to deny Manuel parole, I followed the statutory requirements set forth in Ala. Code §15-22-26.  This statute requires that I determine a prisoner's fitness for parole, and only if I am of the opinion that a prisoner meets such a fitness can parole be granted.

14.   During the reconsideration hearing, *I evaluated Manuel's moderate risk of reoffending, the severity of Manuel's offense, the negative input from stakeholders, and the depreciation of the seriousness of the crime or the promotion of disrespect of the law if I released weighed against a vote in favor of parole.*  These factors constitute proper reasons for denying parole. Based on these factors, I determined that Manuel should be denied parole.

Doc. 19-2 at pp. 2-3. (Emphasis added). Accordingly, the court concludes that Manuel's

due process claim lacks merit.

## 2.  Ex Post Facto Clause Claim

Manuel claims that his constitutional rights were violated when Defendants

created an ex post facto law by their "acts of conspiracy to deprive Manuel of his due

process rights after being in fact 'granted' parole."  (Doc. 1 at pp. 5-6).  To establish such

a claim, "[t]he controlling inquiry . . . [is] whether retroactive application of the change

in [the parole law at issue] create[s] 'a sufficient risk of increasing the measure of

punishment attached to the covered crimes.'"  *Garner v. Jones,* 529 U.S. 244, 250 (2000)

(citations omitted).   However, Manuel does not specifically identify which rules or

statutes the Defendants are allegedly misusing.   To the extent that Manuel claims

Executive Order No. 716, issued October 15, 2018, operated to reverse the Board's decision granting him parole on October 25, 2018 (Doc. 19-2 at pp.1-2), the court concludes this argument fails. First, nowhere in Executive Order No. 716 does Defendant Governor Ivey require or recommend that the Board void or reconsider any previous grant of parole. (Docs. 19-2 at pp. 1-2 and 19-3). Furthermore, the Eleventh Circuit has clearly held that a denial of parole does not increase an inmate's punishment and therefore does not violate the ex post facto clause. *See Harrell v. Fla. Parole Comm'n,* 479 F. App'x 234, 237 (11th Cir. 2021). Thus, the court concludes that this claim lacks merit.

### 3. Equal Protection Clause Claim

Manuel alleges that Defendants have discriminated against him on the basis of his gender by denying him parole. (Doc. 1 at p. 6). "The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'. . . nor does it require the State to 'equalize [its treatment of inmates].'" *Ross v. Moffitt*, 417 U.S. 600, 612 (1974); *Hammond v. Auburn University*, 669 F. Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally."). In order to present a claim of discrimination cognizable under the Equal Protection Clause,

> a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986).

*Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).

Manuel's naming of "star witnesses" (Doc. 1-1), without more, fails to identify any similarly situated inmate, *i.e.*, an inmate with a similar criminal background or prison history, of a different gender, or other protected category, who received differential favorable treatment. Thus, his equal protection claim fails first because he has not alleged that he was treated differently from other, similarly situated prisoners. *Sweet,* 467 F.3d at 1318–19. Additionally, this claim provides no basis for relief because Manuel "has not alleged . . . that he was treated differently on account of some form of ***invidious discrimination*** tied to a constitutionally protected interest." *Sweet*, 467 F.3d at 1319

16

(emphasis in original).  Finally, to the extent parole board members may have imposed a stricter parole requirement on Manuel due to his classification as a "violent offender", "there would be a rational basis for this policy" which is all that is required by the Constitution.  *Id.*; *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009).  Accordingly, for these reasons, the court concludes that Manuel's equal protection claim is due to be denied.

### 4.   The State of Alabama's Prisons

Manuel claims that his parole should be granted due to overcrowding and other problems which currently plague Alabama's prisons.  However, the Eleventh Circuit has warned that "absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts."  *Sellers,* 691 F. 2d at 489.  Further, Alabama law directs that "the decision concerning parole release shall be at the *complete discretion* of the board."  *Ala. Code* § 15-22-26(c). (Emphasis added).  When the Board considers whether to grant or deny parole, the Board "must be of the opinion that the prisoner meets [the] criteria and guidelines established by the board to *determine a prisoner's fitness for parole*."  *Ala. Code* § 15-22-26(a). (Emphasis added).  The statute also requires the Board to produce guidelines promoting the use of prison space for specific offenders, like violent offenders.  *Id.*  Even though the statute requires the Board to consider the efficient use of prison space, nothing in the statute mandates that this factor be considered above others.  *See* Ala. Code § 15-22-26(c).  Rather it is one factor, among others, to be considered by the Board when exercising its discretion.  *Id.*

Despite the clear language of the Alabama statute, Manuel fails to identify any Alabama or federal law which mandates that the Board consider the current state of Alabama's prisons when deciding parole issues. Moreover, Manuel provides no evidence that by failing to consider the condition of Alabama's prisons, the Board acted arbitrarily or outside its discretion. Accordingly, the court concludes that this claim lacks merit.[6]

### 5. Malicious Prosecution

Manuel claims that Defendant Head rescinded her vote granting his parole because of the actions of Jimmy Spencer which is "tantamount to malicious prosecution." (Doc. 62 at p. 1). To establish a Section 1983 claim for malicious prosecution, Manuel must prove (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable searches. *Grider v. City of Auburn, Ala.,* 618 F. 3d 1240, 1256 (11th Cir. 2010).

> As to the first prong, the constituent elements of the common law tort of malicious prosecution are: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.

*Id*. Manuel's claim fails on each of these elements. First, because parole decisions are administrative, there has been no judicial or criminal proceeding. *See Greenholtz,* 442 U.S. at 7 (acknowledging no constitutional right to error free parole decisions "with respect to the sensitive choices presented *by the administrative decision to grant parole release.*") (Emphasis added.) Also, Manuel failed to present any evidence that Defendant

---

[6]  To the extent Manuel is claiming that Alabama's prison conditions mandate his release as opposed to receiving a parole hearing, that claim is due to be dismissed because it is not cognizable in a Section 1983 action. Rather, such a claim can only be considered by the court in a habeas corpus petition. *See Cook v. Baker,* 139 F. App'x 167, 169 (11th Cir. 2005).

Head acted with malice.  Furthermore, there had been no termination of a prosecution in his favor.    Rather, Manuel has a valid conviction, which he does not dispute. Furthermore, he has no right to parole and since he was not released following the decision to grant him parole, he can not claim damage.  *See Jago,* 454 U.S. at 17. Accordingly, the court concludes that this claim lacks merit and that each of Manuel's claims based upon his denial of parole is due to be dismissed against all Defendants for the reasons stated above.

## F.  Retaliation

Manuel claims that Defendants retaliated against him for filing this action by delaying his August 2019 parole hearing. He seeks both monetary and injunctive relief. To proceed on a claim for retaliation and withstand the entry of summary judgment, the Eleventh Circuit has held that

> an inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendants'] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech.  *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005).

 *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).   With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred.  *Smith*, 532 F.3d at 1278-1279 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this conduct ... was a 'motivating factor'" behind the adverse action of the defendant. *Mt. Healthy*, 429 U.S. at 287.   Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).   Taking Manuel's allegations as true, as the court must on summary judgment, the court concludes Manuel fails to state a claim for retaliation based upon his allegations that Defendants delayed his August 2019 parole hearing because he filed the instant action.

Rather, the undisputed facts demonstrate that there is no "causal relationship" between Defendants' alleged delay in scheduling Manuel's parole hearing from August 2019 to May 2021 and the filing of the instant action on February 6, 2019. *Smith,* 532 F.3d at 1276.   Indeed, Gabrelle Simmons ("Simmons"), Board Operations Director for the Alabama Bureau of Pardons and Paroles, testified "I did not and have not received any orders or directives to withhold or delay De'Angelo Manuel's ("Manuel") parole consideration hearing, set for the August 2019 docket.   As far as I am aware, nobody in the Bureau's Docket Unit received any orders or directives to withhold or delay Manuel's parole consideration hearing."  (Doc. 64-2 at p. 2).   Simmons further testified that several occurrences outside the Board's control occurred during this time period and contributed to the delay in setting Manuel's parole hearing.  (Doc. 64-2 at pp. 1-5).

First, prior to August 2019 there was a backlog of parole hearings for numerous violent offenders.   The requirements for victim notification, which apply to crimes

involving violence, slowed this process. Thus, Manuel's parole hearing would likely have been set several months after August 2019. (Doc. 64-2 at pp. 1-2). Second, in June 2019, the statutes governing the scheduling of parole hearings were amended and the amendments became effective on September 1, 2019. Specifically, these amendments changed the process of notifying victims. As a result, parole hearings scheduled after September 1, 2019 were cancelled to ensure compliance. (Doc. 64-2 at p. 2). Third, in October 2019 the Bureau began to move its physical location to a new building. The process of moving, which was completed in January/February 2020, further contributed to the back log which delayed the scheduling of Manuel's parole hearing. (Doc. 64-2 at p. 3). Finally, in early 2020, the Covid-19 pandemic began to impact the scheduling of in-person parole hearings and all such hearings were cancelled through April 2020. After Defendant Governor Ivey issued her Seventh Supplemental State of Emergency Order, the Board began scheduling parole consideration hearings without in-person proceedings, but safety concerns for the Bureau's employees slowed this process. (Doc. 64-2 at p. 4).

By March 2021, the Bureau's docket unit had begun to decrease the backlog, and Manuel and other inmates were in the process of being scheduled for parole hearings at the time Manuel filed his motion on March 8, 2021, seeking to amend his complaint to allege retaliation. *Id.* On March 31, 2021, the Bureau's Docket Unit completed victim notification and scheduled Manuel's parole consideration hearing for May 11, 2021, which was the next available date. (Doc. 64-2 at p. 5). Manuel offers no evidence to dispute these facts; thus, the court concludes that his claim for monetary damages based on retaliation fails.

Furthermore, the claim for injunctive relief is moot because Manuel admitted to the court that his parole hearing, which he alleges was wrongfully delayed beginning in August 2019, was rescheduled for May 11, 2021, following his amendment to the complaint filed on March 8, 2021. (Doc. 54 at p. 1).  Indeed, the court is "not empowered to decide moot questions."  *Wood v. Raffensperger,* 981 F. 3d 1307, 1316 (11th Cir. 2020) (citation omitted).  Generally, a case or issue is determined to be moot, "if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief."  *Uzuegbunam v. Preczewski,* 141 S. Ct. 792, 796 (2021).  Because Manuel's parole hearing was rescheduled to May 11, 2021, the court's granting of injunctive relief to Manuel would have no "practical effect" since he has received the parole hearing sought in this action.  *Flanigan's Enterprises Inc. of Georgia v. City of Sandy Springs, Georgia,* 868 F. 3d 1248, 1264 (11th Cir. 2017).   Accordingly, the court concludes that this claim lacks merit and summary judgment is due to be granted in favor of all Defendants on this claim.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      The Defendants' motion for summary judgment be GRANTED.

2.      Judgment be GRANTED in favor of the Defendants.

3.      This case be DISMISSED with prejudice.

4.      Costs be taxed against Manuel.

On or before **December 28, 2021,** the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.

Frivolous, conclusive, or general objections to the Recommendation will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 13th day of December, 2021.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE